IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN L. CALVERT,                )
                                )   Civil No. 07-222-JE
          Petitioner,           )
                                )
     v.                         )
                                )
CHARLES A. DANIELS,             )
                                )   FINDINGS AND RECOMMENDATION
          Respondent.           )

    John L. Calvert
    FRN: 08522-085
    FCI-Sheridan
    P.O. Box 5000
    Sheridan, Oregon 97378

        Petitioner, *Pro Se*

    Karin J. Immergut
    United States Attorney
    Scott Erik Asphaug
    Assistant United States Attorney
    1000 SW third Avenue, Suite 600
    Portland, OR 97204-2902

        Attorneys for Respondent

///

1 - FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this federal habeas corpus case pursuant to 28 U.S.C. § 2241 in which he alleges that his Fifth Amendment right to Due Process was violated during a prison disciplinary hearing. For the reasons which follow, the Petition for Writ of Habeas Corpus (#2) should be granted.

## BACKGROUND

Petitioner is presently incarcerated at FCI-Sheridan serving a 207-month sentence to be followed by three years of supervised release. On April 16, 2006, petitioner provided a urine sample as part of a random drug test. On April 21, 2006, National Toxicology Laboratories revealed that petitioner had tested positive for Phenobarbital. As a result, prison authorities issued an incident report charging petitioner with the Use of Narcotics in violation of Code 112. A copy of this report was provided to petitioner on the same day.

On April 25, 2006, petitioner came before the Unit Disciplinary Committee ("UDC") and claimed that the pharmacist provided him with the wrong medication, and that this likely was responsible for the tainted sample. Because the charge brought against petitioner carried with it the potential for a loss of good time credit, the UDC referred the case to the Disciplinary Hearings Officer ("DHO") for further proceedings.

2 - FINDINGS AND RECOMMENDATION

Petitioner requested the presence of three witnesses at his disciplinary hearing: Chief Pharmacist L. Shayne Blackmon, Registered Nurse J. Jolly, and Inmate Felciano. Respondent's Attachment 1, p. 15. Petitioner's disciplinary hearing took place on May 17, 2006, and he was represented by his requested staff member, Mr. Hayes from the Education Department. Despite petitioner's request that he wished to call witnesses, none of his requested witnesses were present at the hearing. Instead, it appears from the record that the DHO sent the following email to Blackmon and Jolly:

> On 04-16-06, Inmate CALVERT, John, #0852-085 provided a U.A. for drug testing. This sample tested positive for Phenobarbital. Inmate Calvert is calling you []as a witness and claims on three different occasions he was given the wrong medication. Inmate Calvert claims he spoke to Mr. Blackmon about this issue. Inmate Calvert told the UDC the pills he was suppose[d] to take were green and he was given white pills. Inmate Calvert claims Pharmacist Blackmon and Nurse Jolly witnessed him being issued the wrong medication.
>
> Since the inmate is calling you as a witness, I will need a statement from you indicating:
>
> 1. Was a report of wrong medication ever filed on Inmate Calvert? If so, what type of medication?
>
> 2. Did you ever witness Inmate Calvert being issued the wrong medication?
>
> 3. Was Inmate Calvert given Phenobarbital between 04-03-06 and 04-16-06?
>
> 4. Anything else you wish to add?
>
> You may respond via GroupWise.

3 - FINDINGS AND RECOMMENDATION

<u>Id</u> at 16. Both Blackmon and Jolly responded to this email, and further provided memoranda to the Operations Lieutenant. <u>Id</u> at 10-11, 13. In their responses and memoranda, Blackmon and Jolly denied providing petitioner with improper medication, with Blackmon asserting that petitioner had not received any medication from the Pharmacy which would test positive for Phenobarbital. <u>Id</u> at 10-11, 13, 17-17. There is no indication in the record that petitioner was given an opportunity to question these witnesses.

The only reference in the record to the questioning of Inmate Felciano was that he "was interviewed prior to the DHO hearing." <u>Id</u> at 2. There is no indication in the record provided by respondent that petitioner was given an opportunity to question Felciano. Felciano stated that in 2005 he heard "the pharmacist" tell petitioner not to take his medications. Felciano also stated that he was aware of four or five occasions where petitioner was given the wrong medications. <u>Id</u> at 18.

After considering all of the evidence, including these witness statements, the DHO concluded that petitioner was guilty of Use of Narcotics. The DHO sanctioned petitioner to 40 days loss of good time credit, Disciplinary Segregation for 30 days (suspended), loss of social visitation for one year (excluding immediate family), and loss of his telephone privilege for one year.

On February 15, 2007, petitioner filed this federal habeas corpus action alleging that he was deprived of his Fifth Amendment

4 - FINDINGS AND RECOMMENDATION

right to due process of law when his witnesses were not allowed to be present during his disciplinary hearing. He asks the court to overturn the DHO's ruling, restore his good time credit, and restore his telephone and visitation privileges.

## DISCUSSION

Due process in prison disciplinary hearings requires prison officials to: (1) provide advance written notice of the disciplinary violation; (2) provide a written statement by a factfinder as to the evidence relied upon and the reasons for disciplinary action; and (3) allow the charged inmate an opportunity to call witnesses and present documentary evidence in his defense when allowing him to do so "will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).

Petitioner's claim in this case is very simple. He asserts that although he advised prison authorities of the witnesses he wished to present at his disciplinary hearing, none of them were produced. Although this is petitioner's only claim, respondent has addressed the specifics of the issue only as follows: "The inmate requested three witnesses. The staff witnesses provided written memorandums. An inmate witness was interviewed prior to the hearing and his statement was reflected in the record." Response (#9), p. 5. Respondent generally contends that due process was met

5 - FINDINGS AND RECOMMENDATION

in this case, and asserts that disciplinary actions taken by prison officials are subject only to limited court review.

As noted above, a prisoner's right to call witnesses during a disciplinary hearing is a limited one, and prison officials are not required to produce witnesses if it would be unduly hazardous to institutional safety or correctional goals. However, where prison officials do not allow witnesses to testify at a hearing, they must justify such a decision. Ponte v. Real, 471 U.S. 491, 497 (1985). "[T]hey may do so either by making the explanation a part of the 'administrative record' in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing." Id. "[T]o hold that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing and then conclude that no explanation need ever be vouched for the denial of that right . . . would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board." Id at 498.

In this case, the record reveals that petitioner asked that three witnesses be present at his hearing. At the bottom of the Bureau of Prisons' form which petitioner used to request the presence of these witnesses, he was informed of the following:

> The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available and who are determined by the DHO to have information relevant to

6 - FINDINGS AND RECOMMENDATION

     the charge(s). Repetitive witnesses and repetitive character references need not be called. **Unavailable witnesses may be asked to submit written statements.**

Respondent's Attachment 1, p. 15.

     Importantly, there is also a section of the Discipline Hearing Officer Report which allows the DHO to check a box indicating that "Unavailable witnesses were requested to submit written statements," but the DHO determined that this option was not applicable to petitioner's case. Respondent's Attachment 1, p. 2. Despite the apparent availability of all three witnesses, they were not produced during the hearing, but instead provided written statements for the DHO's consideration. Respondent does not assert, and there is no indication in the record, that petitioner was ever able to question his witnesses. This approach to witness testimony appeared to lead to some confusion, as demonstrated by petitioner's Regional Administrative Remedy Appeal:

> #3 I never said Mr. Blackmon gave me the wrong medication -- I said he witnessed Mr. Tishner give me the wrong meds. #4 I never said Nurse Jolly gave me the wrong meds. I said she witnessed Mr. Tishner give me the wrong meds. When I got a *mix* of meds Mr. Vickroy gave them to me on Saturday. There was little white pills mixed with the green. #5 I was denied my right to due process when none of my witnesse[es] were at my hearing so the confusion could have been squared away.

Respondent's Attachment 2, p. 4.

     It is clear that petitioner did not think the written statements submitted by Blackmon and Jolly actually addressed the principal issue related to his defense. Respondent has not

7 - FINDINGS AND RECOMMENDATION

identified why the witnesses were not allowed to be present at petitioner's hearing, nor has he provided information as to how the witness statements were elicited in this case. Instead, the court is left to review the record and attempt to piece together how and why the witness statements were developed.

Based on the court's review of the record, it appears that all of petitioner's witnesses were available. These witnesses were not interviewed by petitioner, nor were they present for his disciplinary hearing. In the absence of any explanation by respondent as to why petitioner was not given access to his witnesses, the court is left to conclude that respondent applied a blanket rule to petitioner's case which precluded him from interviewing his own witnesses or having them present at his disciplinary hearing.

The Ninth Circuit faced a similar situation in Bartholomew v. Watson, 665 F.2d 915 (9th Cir. 1982). In that case, the Oregon Department of Corrections utilized a blanket rule that prohibited the calling of inmates or prison staff as live witnesses, but did permit the charged inmate to submit questions to the disciplinary committee. The disciplinary committee could, in turn, pass the questions on to the desired witnesses, but retained discretion as to whether to allow the charged inmate to see the answers. Under no circumstance did the committee allow a charged inmate to see another inmate's answers to a questionnaire.

8 - FINDINGS AND RECOMMENDATION

The Ninth Circuit determined that "such a restriction violates the suggestion of the Supreme Court in Wolff that the decision to preclude the calling of a witness should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person." Id at 918. It concluded that "[a] blanket proscription against the calling of certain types of witnesses in all cases involving institutional security is an overreaction which violates minimal due process." Id.

The Sixth Circuit confronted a similar practice in a Michigan prison where the DHO did not allow witness testimony under any circumstance. There, the court concluded that Wolff "requires that officials make an individualized decision on the facts of each case, a requirement clearly at odds with a policy of exclusion under all circumstances." King v. Wells, 760 F.2d 89, 93 (6th Cir. 1985).

In this case, the court concludes that petitioner's right to due process of law was violated when he was denied his opportunity, without any explanation, to call available witnesses during his disciplinary hearing or otherwise question his witnesses. The Petition for Writ of Habeas Corpus should therefore be granted.

### RECOMMENDATION

I recommend that the Petition for Writ of Habeas Corpus (#2) be GRANTED, and that a judgment be entered requiring respondent to restore petitioner's good time credits and lost privileges unless

9 - FINDINGS AND RECOMMENDATION

respondent holds a new hearing within 90 days which complies with the above requirements.

### SCHEDULING ORDER

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issue, and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this **31** day of July, 2007.

_/s/ John Jelderks_
John Jelderks
United States Magistrate Judge

10 - FINDINGS AND RECOMMENDATION